# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| CRAIG E. RUMBLE,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    Civil Action No. 1:19-cv-1212 |
| | ) |
| 2ND AVE VALUE STORES,<br>    Defendant. | )<br>) |

## MEMORANDUM OPINION

Plaintiff, proceeding *pro se*, alleges that his right to make a contract was violated when defendant required plaintiff to leave his backpack at the counter of defendant's retail store and issued plaintiff a Notice Forbidding Trespassing that banned plaintiff from defendant's retail store because of his race. Based on this incident, plaintiff brings a claim for interference with his right to make and enforce contracts under 42 U.S.C. § 1981.[1]

At issue at the threshold in this matter is defendant's Motion to Dismiss plaintiff's First Amended Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. Defendant argues that plaintiff's First Amended Complaint must be dismissed because (i) it is barred by the statute of limitations and (ii) plaintiff fails to state a § 1981 claim.[2] For the reasons that follow, defendant's Motion to

---

[1] Plaintiff's First Amended Complaint also included a claim for intentional infliction of emotional distress under Virginia law, but the facts alleged therein fall far short of stating a claim for intentional infliction of emotional distress under the very rigorous standard established by the Supreme Court of Virginia. *See Russo v. White*, 241 Va. 23, 26 (1991) (requiring a plaintiff to allege "outrageous and intolerable" conduct). Moreover, in the course of oral argument, plaintiff stated that he wished to withdraw his claim for intentional infliction of emotional distress. Accordingly, plaintiff's claim for intentional infliction of emotional distress is no longer at issue and will be dismissed.

[2] As the Fourth Circuit has recognized, "[t]he raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense that may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005); *see also Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (affirming dismissal of complaint pursuant to Rule 12(b)(6) on statute of limitations grounds).

1

Dismiss must be denied with respect to plaintiff's § 1981 claim because plaintiff's § 1981 claim is not time-barred and states a plausible claim for relief.

I.

On September 19, 2019, plaintiff filed his original Complaint, which named John Doe, a retail establishment within the Commonwealth of Virginia, as the sole defendant. On November 26, 2019, plaintiff filed a First Amended Complaint that substituted defendant 2nd Ave Value Stores for John Doe as the defendant.[3] Because plaintiff moved to amend his original Complaint prior to serving defendant, plaintiff was entitled to amend as a matter of right. Defendant was served with plaintiff's First Amended Complaint on December 17, 2019, the 89th day of the original Complaint's 90-day service period under Rule 4(m), Fed. R. Civ. P.

The First Amended Complaint's factual allegations relevant to plaintiff's § 1981 claim may be succinctly summarized. On September 24, 2017, plaintiff, an African-American male, visited defendant's store to buy khaki pants. As plaintiff entered defendant's store, an employee told plaintiff that plaintiff must leave his backpack at the store's counter while shopping. Plaintiff asked whether a sign stated this policy and learned that no such sign was posted. When security personnel approached plaintiff to ask him to remove his backpack, plaintiff observed that a "Hispanic Female Customer" was shopping while wearing a backpack.[4] Security personnel told plaintiff that customers were permitted to wear purses and insisted that plaintiff could not shop while wearing a backpack. After plaintiff asked security personnel and the store manager to call the police to, as plaintiff put it, "get it on record," a Fairfax County Police Officer, Officer

---

[3] At oral argument, plaintiff sought to add 2d Ave LLC as a defendant. Plaintiff's oral motion to amend must be denied because 2d Ave LLC does not appear to be a necessary party to this action.

[4] Plaintiff alleges that, in the course of the incident, he snapped a photo of the individual he identified as the "Hispanic Female Customer" wearing a backpack. Plaintiff attached this photo to his First Amendment Complaint as Exhibit A.

2

McLaren, arrived at the store and listened to the parties' explanations of the situation. As alleged in the First Amended Complaint, plaintiff alleges that the store manager falsely stated that plaintiff had yelled at everyone and requested that plaintiff be banned from the store. Officer McLaren issued plaintiff a Notice Forbidding Trespassing banning plaintiff from the store.[5]

## II.

The motion to dismiss standard is too well-settled to require extensive elaboration. As the Supreme Court has made clear, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Importantly, in making this determination the district court must "accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff]." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015). But the district court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

## III.

Defendant argues that plaintiff's § 1981 claim is barred by a two-year statute of limitations because plaintiff did not name 2nd Ave Value Stores as a defendant until more than two years after the alleged incident. For the reasons that follow, defendant's statute of limitations argument fails; although defendant correctly argues that a two-year statute of limitations period applies to plaintiff's claim, the record reflects that plaintiff's First Amended Complaint relates back to the plaintiff's original Complaint's filing date, which was within two years of the alleged

---

[5] A copy of the Notice Forbidding Trespassing dated September 24, 2017 is attached to plaintiff's First Amended Complaint as Exhibit B.

3

incident. Relation back is appropriate because defendant was served with the First Amended Complaint within the original Complaint's Rule 4(m) service period and this service satisfied Rule 15(c)(1)(C)'s notice and knowledge requirements.

A.

Analysis of the statute of limitations issue properly begins with a determination of the limitations period applicable to plaintiff's § 1981 cause of action. This determination is not inconsequential for defendant's statute of limitations argument. If, as plaintiff contends, plaintiff's § 1981 cause of action is subject to a four-year statute of limitations period pursuant to 28 U.S.C. § 1658, plaintiff's § 1981 claim is certainly timely. But if, as defendant argues, a two-year statute of limitations applies to plaintiff's § 1981 cause of action, it then becomes necessary to analyze whether plaintiff's First Amended Complaint relates back to the original Complaint, which was filed within two years of the alleged incident. For the reasons that follow, Virginia's two-year statute of limitations for personal injury actions properly applies to plaintiff's § 1981 claim.

The limitations period for a § 1981 claim depends on the nature of the § 1981 claim. Enacted as part of the Civil Rights Act of 1866 without a specific statute of limitations, § 1981 guarantees to "[a]ll persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Prior to 1990, the Supreme Court made clear that the state cause of action most analogous to § 1981, a personal injury action, sets the limitations period for § 1981 claims. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660–62 (1987), *superseded by statute*, Civil Rights Act of 1991 (1991 Act), 105 Stat. 1071, *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).

Two subsequent congressional actions modified the practice of borrowing state-law

personal injury limitations periods for § 1981 claims. First, in 1990, Congress enacted 28 U.S.C. § 1658, a "general, 4-year limitations period for any federal statute subsequently enacted without one of its own." *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 n. * (1995). Second, in 1991, Congress amended § 1981 to provide additional protections for the right to make and enforce contracts.[6] In *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), the Supreme Court explained the effect of these two legislative developments on the determination of the applicable statute of limitations period for a § 1981 claim. Specifically, the limitations period for a state-law personal injury cause of action applies to the type of § 1981 claims that could have been brought prior to the 1991 amendments to § 1981, but the newly-enacted, general, 4-year limitations period applies to § 1981 actions "made possible by a post-1990 enactment" such as the 1991 amendments to § 1981. *Id.* at 382–83 (holding that 4-year limitations period applied to hostile work environment, wrongful termination, and failure to transfer claims because those claims were made possible by the 1991 Act).

As the Supreme Court has made clear, § 1981 has long applied to "the would-be contractor along with those who already have made contracts." *Domino's Pizza, Inc. v.*

---

[6] The 1991 Act's amendments to § 1981 added subsections (b) and (c), which provide:

(b) For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyments of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

Pub. L. No. 102–166 (1991), Title I, § 101, Nov. 21, 1991, 105 Stat 1071.

The 1991 Act's amendments provided protection from race-based discrimination after the formation of a contract, overturning *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989). *See id.* at 171 (holding that "racial harassment relating to the conditions of employment is not actionable under § 1981 because that provision does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations").

5

*McDonald*, 546 U.S. 470, 476 (2006) (citing *Runyon v. McCrary*, 427 U.S. 160, 172 (1976)). Here, plaintiff alleges that he was a "would-be contractor" and he thus makes the type of claim that would have been available prior to the 1991 amendments. *See id.* Accordingly, Virginia's two-year statute of limitations for personal injury actions governs plaintiff's § 1981 claim. *See Jones*, 541 U.S. at 382–83; Va. Code. § 8.01-243(A). The limitations period for plaintiff's § 1981 cause of action began to run on September 24, 2017, the date when plaintiff knew of his injury and the wrongdoer, and the limitations period expired on September 24, 2019. *See Smith v. University of Maryland Baltimore*, 770 F. App'x 50, 50 (4th Cir. 2019) ("In determining a § 1981 claim's date of accrual, "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful.") (emphasis in original) (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (per curiam)).

In sum, the statute of limitations period for plaintiff's § 1981 cause of action began to run on September 24, 2017, and the limitations period for plaintiff's § 1981 cause of action expired on September 24, 2019.

**B.**

Defendant argues that Virginia's two-year statute of limitations for personal injury actions bars plaintiff's § 1981 claim. For the reasons that follow, defendant is incorrect that plaintiff's § 1981 claim is time-barred because plaintiff's First Amended Complaint relates back to the original Complaint's filing date, which was within two years of the alleged incident.

Rule 15(c)(1)(C), Fed. R. Civ. P., provides that an "amendment to a pleading relates back to the date of the original pleading when:"

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the [90-day] period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

6

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Rule 15(c)(1)(C).

Here, the parties do not dispute that the First Amended Complaint "arose out of the conduct, transaction, or occurrence set out" in the timely original Complaint filed on September 19, 2019. *See* Rule 15(c)(1)(B). The central dispute between the parties is whether Rule 15(c)(1)(C)'s requirements were satisfied within the Rule 4(m) period for service of the summons and the Complaint.[7]

The Fourth Circuit has made clear that where, as here, an original timely Complaint's Rule 4(m) service period has not expired before a prospective defendant (i) receives notice of the action and (ii) knows or should know that the action would have been brought against the prospective defendant, an amendment to add the prospective defendant relates back to the original timely Complaint's filing date. First, service of the First Amended Complaint on December 17, 2019 provided defendant with notice of plaintiff's timely original Complaint within the original Complaint's Rule 4(m) period such that defendant is not prejudiced in defending this action. The Fourth Circuit's decision in *Robinson v. Clipse*, 602 F.3d 605 (4th Cir. 2010), confirms this result. There, a prospective defendant, a police officer whose department was originally named as the sole defendant, was not prejudiced in defending an action where the

---

[7] Rule 15(c)(1)(A) does not aid plaintiff's relation back argument. Rule 15(c)(1)(A) permits relation back when "the law that provides the applicable statute of limitations allows relation back," but Virginia's relation back notice requirement is no more generous than Rule 15's notice requirement. *See* Va. Code. § 8.01-6 (requiring that "within the limitations period prescribed for commencing the action against the party to be brought in by the amendment, that party or its agent received notice of the institution of the action").

7

prospective defendant received notice within the Rule 4(m) period and the action had not advanced beyond the pleading stage. *Id.* at 609 (holding that service of *in forma pauperis* plaintiff's complaint on prospective defendant within Rule 4(m) period that began when district court authorized issuance of summons and service of process satisfied Rule 15(c)(1)(C)'s requirements). Importantly, the Fourth Circuit concluded that the prospective defendant "would have been in the same position" had he been named in the original Complaint. *Id.* Here, plaintiff's amendment within the Rule 4(m) period to name defendant does not prejudice defendant for similar reasons; the proceedings did not advance without defendant's participation, and defendant would have received the same notice had defendant been named in the original Complaint but not learned of the action until service was made on Rule 4(m) period's 89th day. *See id.*

Second, when plaintiff served defendant with the First Amended Complaint within the Rule 4(m) period, defendant knew or should have known that plaintiff would have brought the action against defendant "but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). The Fourth Circuit does not focus on the reason for a plaintiff's "mistake" in the original pleading, but rather reads Rule 15's "mistake" language to require that the prospective defendant must "have expected or should have expected, within the limitations period, that it was meant to be named a party in the first place." *Robinson*, 602 F.3d at 609–10 (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 471 (4th Cir. 2007) (en banc)). Under Rule 15(c)(1)(C), the Rule 4(m) service period is "the 'limitation period' for purposes of analyzing whether the newly added defendant received notice and should have had knowledge of the action." *Robinson*, 602 F.3d at 608. Here, notwithstanding plaintiff's filing of his original Complaint against John Doe, defendant should have known that defendant "was meant to be

8

named a party in the first place" within the Rule 4(m) period when the First Amended Complaint was served on defendant on December 17, 2019. *See id.* at 609–10 (quoting *Goodman*, 494 F.3d at 471). Accordingly, service of plaintiff's First Amended Complaint on defendant within the Rule 4(m) period met Rule 15(c)(1)(C)'s requirements, and plaintiff's First Amended Complaint relates back to plaintiff's original timely Complaint.

Seeking to avoid this result, defendant argues that plaintiff's claims are time-barred because more than two years passed between the incident and the date when plaintiff substituted defendant for John Doe in the First Amended Complaint. Plaintiff relies chiefly on *Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007), to argue that plaintiff's attempt to substitute defendant for the original Complaint's John Doe defendant is not permissible because a plaintiff may not "name any party within the limitations period with the hope of amending later, perhaps after discovery." *Id.* at 472–73. But a careful reading of this quotation in the context of *Goodman*'s relation back analysis confirms the result reached here, namely that a plaintiff may substitute a named defendant for a John Doe defendant provided that the plaintiff does so in accordance with Rule 15(c)(1)(C)'s notice and knowledge requirements. In *Goodman*, the Fourth Circuit concluded that an amendment related back where a prospective defendant, the named defendant's corporate subsidiary, had notice and knowledge within the limitations period of the plaintiff's original action, which incorrectly identified the named defendant, not the prospective defendant, as a defunct entity's successor-in-interest. 494 F.3d at 473–75. In doing so, the Fourth Circuit eschewed a close reading of "mistake" that would have precluded relation back because of the plaintiff's previous lack of knowledge regarding the proper defendant to sue. *Id.* at 469 ("The interpretation of Rule 15(c) made by the district court and now urged by the Praxair defendants focuses unnecessarily on the type of mistake without addressing the notice and

prejudice to the new party.").

Of particular significance here, *Goodman* explains that Rule 15's "'mistake' language is not the vehicle to address" concerns associated with "John Doe" substitutions because Rule 15's "notice and prejudice requirements adequately police this strategic joinder practice." *Id.* at 473. Rule 15's "emphasis on notice, rather than on the type of 'mistake' that has occurred, saves the courts not only from an unguided and therefore undisciplined sifting of reasons for an amendment but also from prejudicing would-be defendants who rightfully have come to rely on the statute of limitations for repose." *Id.* Here, because plaintiff has satisfied Rule 15(c)(1)(C)'s notice and knowledge requirements, plaintiff's First Amended Complaint naming defendant relates back to the original Complaint, and the reason why plaintiff named John Doe is immaterial to whether plaintiff's First Amended Complaint relates back to the original Complaint.[8]

*Goodman*'s analysis of the role of "mistake" in relation back analysis clarified the holding of another case relied on by defendant, *Locklear v. Bergman & Beving AB*, 457 F.3d 363 (4th Cir. 2006), and *Goodman*'s binding interpretation of *Locklear*'s holding supports the result reached here. *Goodman*, 494 F.3d at 472 (noting that in *Locklear* "we used the 'mistake' language as a shorthand term to hold that the party to be added must have known of the mistake"). In *Locklear*, a plaintiff injured in a metal fabrication accident named the city where a machine's manufacturer was located as a defendant instead of the manufacturer itself and moved to amend eight months after the original filing and six months after the limitations period for plaintiff's cause of action had run. *See* 457 F.3d at 364. *Locklear* held that the amended

---

[8] Because plaintiff's understanding about defendant's identity is not at issue under the Rule 15 analysis outlined in *Goodman*, plaintiff's argument that his misunderstanding resulted from defendant's failure to register its fictious name with the State Corporation Commission pursuant to Va. Code § 59.1-69 is inapposite.

complaint did not relate back to the original filing date because the prospective defendant was not "chargeable with the mistake," and the improper name resulted from plaintiff's "lack of knowledge of the proper party." *Id.* at 366 (quoting *Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir. 1989). The Fourth Circuit also noted in *Locklear* that "the weight of federal case law h[eld] that the substitution of named parties for "John Doe" defendants does not constitute a mistake pursuant to Rule 15(c)[ ]." *Locklear*, 457 F.3d at 367. Here, defendant presses an argument based on this passage from *Locklear*, arguing that the First Amended Complaint's substitution of defendant for the original Complaint's John Doe is not a mistake pursuant to Rule 15(c)(1)(C)(ii). *See id.* By instructing courts to focus on notice and prejudice, *Goodman* rejected the notion that a John Doe substitution can never qualify as a mistake that permits relation back under Rule 15(c). *See Goodman*, 494 F.3d at 473. Specifically, in *Goodman*, the en banc Fourth Circuit clarified that relation back was properly denied in *Locklear* because the defendant named "was not chargeable within the limitations period with knowledge that it should have originally been named as a defendant." *Id.* at 472 (citing *Locklear*, 457 F.3d at 366); *see also Goodman*, 494 F.3d at 472 (discussing *Locklear* and stating that "[t]o the extent there is a conflict in holding, this opinion controls"). Here, by contrast, relation back is proper because defendant had knowledge within the Rule 4(m) period that defendant should have originally been named as a defendant. *See id.*[9]

To allow relation back where, as here, a plaintiff names a defendant within the Rule 4(m) service period after filing an original Complaint against John Doe is fully consistent not only

---

[9] Another case cited by defendant, *Day v. City of Fredericksburg, Va.*, 2016 WL 7029830 (E.D. Va. March 2, 2016) is similarly distinguishable. *Id.* at *4–5. There, the John Doe defendants were not named as defendants or otherwise identified within the service period, and thus there was no indication that those parties had knowledge of the timely filed complaint within the Rule 4(m) period. *See id.*

11

with Fourth Circuit precedent, but also with the Supreme Court's analysis of relation back under Rule 15(c)(1)(C) in *Krupski v. Costa Crociere, S. p. A.*, 560 U.S. 538 (2010). There, a plaintiff who tripped over a cable and broke her leg while aboard a cruise ship timely filed a complaint against the cruise ship's sales and marketing agent but did not name the cruise ship's carrier as a defendant. *Id.* at 541–543. After the limitations period expired, the sales and marketing agent informed plaintiff of the carrier's existence in the agent's answer, corporate disclosure statement, and motion for summary judgment. *Id.* at 543–44. After summary judgment and nearly five months after the limitations period expired, plaintiff moved to amend her complaint to add the carrier as a defendant. Because the carrier in *Krupski* had constructive notice of plaintiff's complaint within the Rule 4(m) period, the Supreme Court held that the plaintiff's amended complaint related back. *Id.* at 554–55. In so holding, the Supreme Court emphasized that the inquiry pursuant to Rule 15(c)(1)(C)(ii) "asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Id.* at 548 (emphasis in original).

Here, defendant's receipt of actual notice via service of the First Amended Complaint within the Rule 4(m) period satisfies Rule 15(c)(1)(C)(ii)'s requirements as outlined in *Krupski*. *See id.* As the Fourth Circuit has recognized in an unpublished opinion, both *Goodman* and *Krupski* focus "on the notice to the new party and the effect on the new party that the amendment will have." *Everett v. Prison Health Servs.*, 412 F. App'x 604, 606 n. 3 (4th Cir. 2011) (citing *Goodman*, 494 F.3d at 470). Because *Krupski* was not a John Doe substitution case, the Supreme Court's decision does not alter *Goodman*'s application of Rule 15 to John Doe substitutions within the Fourth Circuit.[10]

---

[10] Defendant also cites *Njoku v. Unknown Special Unit Staff*, 217 F.3d 840, 2000 WL 903896 (4th Cir. July 7, 2000)

12

To be sure, other circuits have taken a different view regarding the role of Rule 15's "mistake" language when analyzing whether John Doe substitution amendments relate back to earlier pleadings. *See Ceara v. Deacon*, 916 F.3d 208, 212–13 (2d Cir. 2019) (reaffirming that a lack of knowledge of a John Doe defendant's name does not constitute a mistake of identity that permits relation back under Second Circuit precedent); *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) (holding that John Doe substitutions do not satisfy Rule 15(c)(1)(C)(ii)'s mistaken identity requirement); *Heglund v. Aitkin County*, 871 F.3d 572, 579 (8th Cir. 2017) (concluding that naming a John Doe defendant is not a "mistake").[11] But *Goodman*'s prescribed reading of Rule 15 instructs district courts to focus on notice and prejudice to avoid "[t]he disagreement among courts over which mistakes are forgiven under Rule 15(c) and which mistakes result in dismissal." *Goodman*, 494 F.3d at 473. The result reached here is consistent with Fourth Circuit precedent's emphasis on notice to a prospective defendant within the Rule 4(m) period.

In sum, Fourth Circuit precedent persuasively points to the conclusion that plaintiff's First Amended Complaint relates back to the date of the original Complaint because defendant had the requisite notice and knowledge during the Rule 4(m) period that defendant was meant to be named a party in this action.

---

(unpublished Table decision) for the proposition that "[t]he designation of a John Doe defendant is generally not favored in the federal courts." *Id.* at 1 (vacating entry of judgment against unidentified John Doe defendants). But *Njoku* has no bearing on defendant's argument against relation back in situations involving John Doe substitutions because there the Fourth Circuit "express[ed] no opinion as to whether Njoku will be able to meet the requirements of Fed. R. Civ. P. 15(c) in order to amend his pleadings to include the identified John Doe defendants." *Id.* at 1 n. 1.

[11] It is also worth noting that district courts outside of the Fourth Circuit have concluded that *Krupski* altered the applicability of Rule 15(c)(1)(C)(ii)'s mistake language to John Doe substitutions. *See, e.g., Haroon v. Talbott*, 2017 WL 4280980, at *7 (N.D. Ill. Sept. 27, 2017) ("In sum, after *Krupski*, a plaintiff is not automatically prevented from invoking the relation-back doctrine merely because he lacked knowledge of the proper party to sue."); *see also* Meg Tomlinson, Note, *Krupski and Relation Back for Claims Against John Doe Defendants*, 86 Fordham L. Rev. 2071, 2092–97 (2018) (surveying relation back decisions involving John Doe substitutions after *Krupski*). As noted, the Fourth Circuit's position on Rule 15's application to John Doe substitutions was clear prior to *Krupski* and remains binding following *Krupski*.

# IV.

Defendant's second dismissal argument contends that plaintiff's First Amended Complaint fails to state a § 1981 claim. For the reasons that follow, plaintiff has stated a claim for interference with plaintiff's right to make and enforce contracts under § 1981.[12]

Section 1981 grants all persons within the jurisdiction of the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).[13] This statute "protects the would-be contractor along with those who already have made contracts." *Domino's Pizza*, 546 U.S. at 476. Because plaintiff has not presented any direct evidence of intentional racial discrimination by defendant,[14] plaintiff must show sufficient circumstantial evidence to satisfy the *McDonnell-Douglas* analytical framework. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004) (holding that defendant's acceptance of out-of-state checks from white customers but not black customers precluded summary judgment).

To establish a *prima facie* case of discrimination in a § 1981 claim relating to the purchase of goods or services, plaintiff must establish that: (1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to

---

[12] As defendant notes in its Reply brief, plaintiff's memorandum in opposition to defendant's motion to dismiss fails to contest defendant's arguments with respect to plaintiff's Complaint's failure to state a claim. In light of plaintiff's *pro se* status, it is appropriate to address these arguments without considering them to be conceded.

[13] Plaintiff also alleges that defendant discriminated against him because of his gender. This claim is dead on arrival; the Supreme Court has made clear that gender discrimination claims cannot be brought under § 1981. *See Runyon v. McCrary*, 427 U.S. 160, 167 (1976) (noting that § 1981 "is in no way addressed" to sex-based selectivity).

[14] Direct evidence is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." *Johnson v. Mechs. & Farmers Bank*, 309 F. App'x 675, 681 (4th Cir. 2009) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc)).

contract for goods or services that was otherwise afforded to persons outside of the protected class. *See id.* (citing *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001).

Plaintiff's First Amended Complaint alleges facts that meet each of these elements. As an African-American, plaintiff is a member of a protected class and satisfies the first element. *Id.* at 668. The second element, that plaintiff "sought to enter into a contractual relationship" with defendant, is satisfied because plaintiff alleges that he entered the store to buy a pair of khaki pants but could not do so before defendant's employees told defendant to remove his backpack and ultimately banned plaintiff from defendant's store. The third element, that plaintiff met the store's ordinary requirements to pay for and to receive goods or services, is also satisfied by plaintiff's allegation that he visited the store to buy a pair of khaki pants, which, taken in the light most favorable to plaintiff, yields the reasonable inference that he met defendant's ordinary requirements for purchasing goods. The fourth element, that plaintiff was denied the opportunity to contract for goods or services that was otherwise afforded persons outside the protected class, is satisfied by plaintiff's allegations that a "Hispanic Female Customer" was permitted to shop while wearing a backpack immediately prior to defendant asking plaintiff to comply with the backpack policy and banning plaintiff from the store.

Seeking to avoid this result, defendant argues that plaintiff has not pleaded sufficient facts to show that plaintiff lost "an actual, not speculative or prospective, contract interest." *See Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 435 (4th Cir. 2006) (holding that plaintiff's purchase of salon treatment for mother established a contractual relationship). Specifically, defendant contends that plaintiff failed to allege "an attempt to purchase, involving a specific intent to purchase an item, and a step toward completing that purchase" *Withers v. Dick's Sporting Goods, Inc.*, 636 F.3d 958, 963 (8th Cir. 2011) (holding that customer sought to enter

contractual relationship where customer selected a shirt to purchase before customer noticed employee's surveillance). Plaintiff's argument in this regard is unpersuasive. Where, as here, a customer alleges that he entered a store with the intent to make a specific purchase but was asked to leave before he could do so, the customer's failure to take an additional step toward completing a purchase is not fatal to the customer's § 1981 claim. To hold otherwise would permit the unacceptable result that a store could turn away an individual because of race at the store's threshold without incurring § 1981 liability. *See Watson v. Fraternal Order of Eagles*, 915 F.2d 235, 243 (6th Cir. 1990) (holding that fact that plaintiff's demonstrated attempt to enter into contract to purchase drinks where plaintiffs were asked to leave before store refused service); *Bagley v. Ameritech Corp.*, 220 F.3d 518, 521 (7th Cir. 2000) (noting that plaintiff's failure to state specific intent to purchase phone before one employee refused to serve him did not mean plaintiff failed to attempt to contract, but ultimately holding that plaintiff did not attempt to contract because plaintiff left despite another employee's offer to help).

The First Amended Complaint's allegations that plaintiff was banned after plaintiff refused to comply with the backpack policy and asked defendant's employees to call the police do not render plaintiff's interference claim implausible because defendant's employees asked Officer McLaren to force plaintiff to leave the store. Standing alone, a security measure requiring a customer to leave bags at a store counter while shopping would not interfere with a customer's ability to contract. *See Garrett v. Tandy Corp.*, 295 F.3d 94, 101 (1st Cir. 2002) (holding that plaintiff's claim that he was surveilled while shopping was not actionable under § 1981 because the "watchfulness neither crosse[d] the line into harassment nor impair[ed] [the] shopper's ability to make and complete purchases"). But here, although plaintiff requested a police presence, defendant's employees requested that Officer McLaren issue the Notice Forbidding Trespassing

16

which prevented plaintiff from shopping at defendant's store after plaintiff questioned defendant's evenhandedness in applying the backpack policy. Defendant's ejection of plaintiff from the store distinguishes this case from others in which courts have held that security measures did not deprive plaintiffs of the right to make contracts. *See Morris v. Office Max, Inc.*, 89 F.3d 411, 414 (7th Cir. 1996) (holding that police surveillance of black customers at store's request did not interfere with plaintiffs' rights to make and enforce contracts because plaintiffs only showed a general interest in the merchandise and "were denied neither admittance nor service, nor . . . asked to leave the store.").

In sum, plaintiff has plausibly alleged interference with his right to make a contract based on his race because defendant's employees banned plaintiff from the store shortly after plaintiff questioned the store's disparate treatment of customers.

## V.

For the reasons stated above, plaintiff's § 1981 claim is not time-barred, and plaintiff has plausibly alleged that defendant interfered with plaintiff's right to make and enforce contracts. Accordingly, defendant's motion to dismiss must be denied with respect to plaintiff's § 1981 claim, and plaintiff's § 1981 claim goes forward.

An appropriate Order will issue separately.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record and the plaintiff, who is proceeding *pro se* in this matter.

Alexandria, Virginia
March 3, 2020

/s/
T. S. Ellis, III
United States District Judge